**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. CONNECTICUT CO.**

Civil Action No. 1121.

District Court, D. Connecticut.

Sept. 13, 1945.

George H. Foley, Regional Atty., U. S. Dept. of Labor, of Boston, Mass., for plaintiff.

H. L. Filer, of New Haven, Conn., for defendant.

SMITH, District Judge.

This action is brought by the plaintiff as Administrator of the Wage and Hour Division of the United States Department of Labor to enjoin alleged violations by the defendant of the Fair Labor Standards Act. Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. The alleged violations are based upon the practice of the defendant of working some forty-odd powerhouse employees forty-eight hours a

week without paying them time and one-half for the hours worked over forty per week. The defendant is a local trolley and motor bus carrier, operating trolley lines in and about New Haven and bus lines also located solely within the State of Connecticut. It originally built, and added to, its powerhouse for the purpose of furnishing current to its electric trolley lines. It also has sold, and sells, minor amounts of current to several tenants who run amusement parks. To promote the efficient operation of the powerhouse as more and more of its lines were changed over from electric trolley to motor bus service, it has sold increasing amounts of power, which it could economically generate and which were surplus to its own needs, to the New Haven Railroad, the sole owner of the capital stock of the defendant. It also sells a small amount of electric power to the City of New Haven for the operation of its drawbridges. This drawbridge power and the power purchased by the railroad are used in the transportation of persons and goods in interstate commerce. In recent years, the proportion of power generated by the defendant which has been sold for all these purposes has averaged between twenty and thirty percent, the proportion in 1944 amounting to some nineteen and a fraction percent.

[1] There are two questions presented: First, whether the powerhouse employees are engaged in (interstate) commerce or the production of goods for (interstate) commerce. There seems little question about this since a substantial part of the goods produced by them is produced to be used in interstate commerce, that is, the current which goes into the operation of the New Haven Railroad and the drawbridges of the city. Some of the current sold to the railroad flows across state lines. The proportion of the current produced at different hours which is produced for commerce varies greatly, but there is no time during the week when some substantial amount is not being produced for this purpose by the efforts of all the powerhouse employees then working. It is not possible to segregate the time spent by the employees into time spent producing power solely for the operation of the trolley lines and time spent producing power for sale for use in interstate commerce. It is true that this sale of power for interstate commerce amounts to less than one percent of the total revenues of the defendant. It is not, however, sporadic or occasional or insubstantial in total amount. Therefore, all employees who spend any substantial part of their time in any workweek in the production of power are engaged in interstate commerce and are, as a consequence, covered by the Act unless within one of the Act's exemptions. New Mexico Public Service Co. v. Engel, 10 Cir., 1944, 145 F.2d 636, 640.

The second question presented is whether these powerhouse employees, even though engaged in interstate commerce or the production of goods for interstate commerce, are exempt from the Act because of Section 13(a) (9) of the Act which states that the maximum hour provisions shall not apply with respect to "any employee of a street, suburban, or interurban electric railway or local trolley or motorbus carrier." It is conceded that the defendant is a local trolley or motor bus carrier. The plaintiff contends, however, that the exemption is to be strictly construed and is not to be held to apply to employees of the defendant engaged in any other business of the defendant than that which is strictly carriage by local trolley or motor bus. Since only about ten percent of all local trolley lines in the United States manufacture their own power, it is contended by the plaintiff that the powerhouse operation is not an essential or usual part of local trolley, or motor bus carrier business.

To support the plaintiff's contention that vehicle operators alone are exempt, it is pointed out that the principal argument made in the Congress by proponents of the exemption for employees of local trolley and motor bus carriers was the difficulty of adapting the schedule of runs of vehicles to a rigid limitation of hours of the vehicle operators. Undoubtedly, with that argument before it, the Congress intended to exempt these operators from the coverage of the Act. It is difficult to say, however, whether the failure of the Congress more specifically to limit the exemption to those vehicle operators means that it was thought that the Congress had achieved such a limitation by the language used, or, on the other hand, that exemption of all employees including operators was intended, to avoid confusion and management difficulties which might arise through the application of the exemption to some employees of such local companies, and not to others. The latter seems more likely. Of course, it is possible that, in the consideration of the

many problems involved in the final drafting of this Act, affecting so many millions of people, the effect of this language on employees other than the operators was never given any actual thought.

■ Since there is no specific limitation to vehicle operators, since the production or purchase of electric power is necessary to the operation of the defendant's electric trolley lines, and since the power plant was designed as an integral part of the electric trolley system, it would appear that employees of the power plant, while engaged in the production of power for the trolley lines, are within the terms of the exemption as employees of a local trolley or motor bus carrier. Were there no other uses of the power produced than in the operation of the trolley lines, the exemption should apply.

The plaintiff also contends, however, that, even if it should be held that the exemption is not restricted to vehicle operators, the production of power for sale is not, under any circumstances, part of the operation of a local trolley business.

In answer to this contention, the defendant points out a number of instances in which the incidental sale of surpluses produced in the efficient operation of a principal business has been held not to destroy the character of that business for the purpose of various statutory powers and exemptions, and points out that, for some purposes, the production of power for the operation of trolleys has been held an integral part of that business. The defendant also points out, and in situations more closely analogous, cases construing exemptions somewhat similar to that here to be construed, as depending solely upon the principal business of the employer and reaching all employees regardless of their individual work in some other business of the employer. Three of the cases are perhaps distinguishable since one, Trustees of Columbia University v. Herzog, 1945, 269 App.Div. 24, 53 N.Y.S.2d 617, involves an exemption of educational and charitable institutions, ever objects of special consideration by legislatures, and two of the others, Brittan v. Hudson & Manhattan Railway Co., D.C.S.D.N.Y. 1943, 50 F.Supp. 37, and Anderson v. Southern Pacific Co., D.C.S.D.N.Y.1944, 62 F.Supp. 730, involve Section 13(b) (2) of this Act—employers subject to

regulation by another body under legislation designed to meet their own peculiar problems.

The remaining case cited, Soleim v. Tuverson, Cir.Ct.Wis.1943, 7 Labor Cases, par. 61825, appears to turn on the handling of the same commodity retail and in bulk by a retail service establishment and, if not so distinguished, in view of the later Supreme Court case of A. H. Phillips, Inc., v. Walling, Adm'r, 1945, 324 U.S. 490, 65 S. Ct. 807, it may be questioned whether it meets its test of narrow construction of the exemption.

In the drafting of the Act, just as it seemed proper to exempt other typically local businesses in which only a small proportion of the competitors might be within reach of Congressional power, from coverage under the Act, so coverage was withheld from local trolley and bus carriers which happened to cross state lines.

■ If the employer regularly and substantially engages in an otherwise non-exempt business other than the one for which the exemption was designed, however, strict construction of the exemption requires that it be not extended to that other business merely because the principal business of the employer is exempted. To do so would hardly be fair to those who must compete in that other business as their major activity.

■■ Here a substantial proportion of the power produced is sold for use in commerce outside the trolley lines, in competition with employers whose employees are covered by the Act. Strict construction of the exemption such as is required in the interpretation of this Act (A. H. Phillips, Inc., v. Walling, Adm'r, supra) necessitates that the exemption be not extended to such collateral, not purely carrier activities, even though they are financially helpful to the carrier.

Judgment may be entered in favor of the plaintiff, enjoining the defendant from violation of the overtime provisions of the Act with regard to any powerhouse employees so long as any substantial amount of power produced is sold in interstate commerce or for the operation of instrumentalities of interstate commerce aside from the defendant's local carrier services. Form of judgment in accordance with this opinion may be submitted on notice.