## NELSON et al. v. AGWILINES, Inc.

## GUNDERSON et al. v. EASTERN S. S. LINES, Inc.

District Court, S. D. New York.
May 28, 1946.

Abraham M. Fisch, of New York City, for plaintiffs.

Burlingham, Veeder, Clark & Hupper, of New York City (Herbert M. Lord, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

In Civil Action No. 31—246 the defendant, Agwilines, Inc., has moved—"for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure [28 U.S.C.A. following section 723c] granting summary judgment in favor of the defendant, Agwilines, Inc., dismissing the complaint herein, on the ground that there is no genuine issue as to any material fact with respect to the affirmative defense that plaintiffs are not subject to the maximum hours provisions of the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 201 et seq.] because defendant was at all material times subject to Part 1 of the Interstate Commerce Act [49 U.S.C.A. § 1 et seq.] and that defendant is entitled to judgment as a matter of law and for such other and further relief as to this Court may seem just and proper."

In Civil Action No. 31—248 the defendant, Eastern Steamship Lines, Inc., has made a similar motion. Both motions will be denied for reasons hereinafter stated.

Plaintiffs in each case allege that they were employed by the defendant as attendants on a lighter, "which lighter was a vessel with no motive power and not self-propelled and was used for the storage and carriage of cargo within the Port of New York in the transaction and in furtherance of interstate commerce." The complaints also allege "that the duties of the plaintiff, while employed upon the lighter of the defendant, required the plaintiff to supervise and assist in the loading or unloading of the lighter while in port; to act as caretaker of the lighter when

loaded and to handle receipts and inventories of the cargo." The complaint further states that the action is brought under the provisions of the Fair Labor Standards Act of 1938, Sections 7(a) and 16(b), and that the plaintiffs are not seamen within the exemption provision of Section 13 (a) (3) of the Act. The Circuit Court of Appeals of this Second Circuit has held that lighter attendants or barge captains doing the work of the plaintiffs are not "seamen" within the exemption provision of § 13(a) (3) of the Fair Labor Standards Act. Anderson v. Manhattan Lighterage Corporation, 2 Cir., 148 F.2d 971. That case thus ruled out the first special defense in the case at bar.

There are allegations concerning the basic workweek of the plaintiffs and their employment by the defendant for a number of hours in excess of the maximum hours fixed by § 7 of the Fair Labor Standards Act, for which they were not paid one and a half times the regular rate. Judgment for the overtime is demanded, plus the usual 100% liquidated damages, costs and an attorney's fee.

In each case the defendant has interposed an answer which pleads, as a second complete defense, that at all the times mentioned in the complaint the defendant "was subject to the provisions of Part 1 of the Interstate Commerce Act and is exempt from the provisions of § 7 of the Fair Labor Standards Act of 1938." § 13(b) (2) of the Fair Labor Standards Act, Title 29 U.S.C.A. § 213(b) (2). The motion for summary judgment in each of these cases presents the issue raised by that special defense.

Section 1 of the Interstate Commerce Act, Title 49 U.S.C.A. § 1, provides:

"(1) Carriers subject to regulation. The provisions of this chapter shall apply to common carriers engaged in—

"(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment;

* * * * * *

"(2) Transportation subject to regulation. The provisions of this chapter shall also apply to such transportation of passengers and property and transmission of intelligence, but only in so far as such transportation or transmission takes place within the United States, but shall not apply—
* * *_

"(c) To the transportation of passengers or property by a carrier by water where such transportation would not be subject to the provisions of this chapter except for the fact that such carrier absorbs, out of its port-to-port water rates or out of its proportional through rates, any switching, terminal, lighterage, car rental, trackage, handling, or other charges by a rail carrier for services within the switching, drayage, lighterage, or corporate limits of a port terminal or district.

* * * * * *

"(3) (a) The term 'common carrier' as used in this chapter shall include all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation as aforesaid as common carriers for hire."

In opposing these motions each plaintiff states:

"I neither affirm or deny that the defendant may have had an arrangement to ship merchandise from vessels by railroad to certain parts of the United States, but the fact remains that insofar as the goods and merchandise that were transported by the lighters on which I was employed, these goods and merchandise were never transported under a common arrangement with railroads and pursuant to the decisions, which my attorney will refer to in his affidavit, the defendant was acting as a private carrier of the merchandise on the lighters on which I was employed and cannot claim the benefit of the Interstate Commerce Act."

The moving papers of the defendant Agwilines, Inc., contain a number of tariff schedules and orders of the Interstate Commerce Commission, and Mr. Horner, an Assistant to the Vice-President, submits an affidavit from which the following statements are quoted:

"A majority of the normal operations of Agwilines, Inc. comprise shipments partly by water and partly by railroad under through bills of lading in which Agwilines,

Inc. is named either as initial, intermediate or delivering Carrier. On all such shipments, applicable tariffs filed with the Interstate Commerce Commission, pursuant to Section 6 of the Interstate Commerce Act (49 U.S.C. 6 [49 U.S.C.A. § 6]) provide for joint through rates for transportation over the lines of the participating rail and steamship carriers."

In the Gunderson action against the Eastern Steamship Lines, Inc., an affidavit is submitted of J. Leo Ridley, Freight Traffic Manager, from which I quote the following:

"Eastern Steamship Lines, Inc. was incorporated under the laws of the State of Maine in 1917 and has operated in coastwise service under tariffs continuously in effect since that time.

"Over 90% of the normal operations of Eastern Steamship Lines, Inc. comprise shipments partly by water and partly by railroad under through bills of lading in which Eastern Steamship Lines, Inc. is named either as initial, intermediate or delivering carrier. On all such shipments applicable tariffs on file with the Interstate Commerce Commission pursuant to Section 6 of the Interstate Commerce Act (49 U.S. C. 6 [49 U.S.C.A. § 6]) provide for joint through rates for transportation over the lines of the participating steamship and rail carriers."

Annexed to Mr. Ridley's affidavit are copies of freight rates that have been filed with the Interstate Commerce Commission in relation to the Eastern Steamship Lines.

On this motion for summary judgment there appears to be no issue presented, as I see it, in respect to the defendant's contention that it is a common carrier subject to the provisions of Part 1 of the Interstate Commerce Act, under Section 1, subdivision (a) hereinabove quoted. However, plaintiffs raise the issue that the particular type or method of the transportation in which they are engaged as employees of defendant is not subject to regulation by the Interstate Commerce Commission, and that the defendant is not subject to Part 1 of the Interstate Commerce Act by reason of the transportation in which plaintiffs are employed.

The Interstate Commerce Act describes both the carriers who are subject to the Act and the form or method of transportation that may be regulated under the Act. This distinction appears in the opinion of Mr. Justice Cardozo in Pennsylvania R. Co. v. P. U. Com'n, 298 U.S. 170, at page 174, 56 S.Ct. 687, at page 689, 80 L.Ed. 1130, from which I quote the following:

"The Interstate Commerce Act (49 U.S. C. § 1 et seq.) is aimed at common carriers exclusively, (Section 1(1, 3), * * * and not even at all these. With exceptions plainly unrelated to this case (Section 1(1) (b, c), * * * carriers, even though common, are unaffected by the act unless they are carriers wholly by railroad, or if partly by railroad and partly by water, are operating under 'a common control, management, or arrangement for a continuous carriage or shipment.' Section 1(1) (a) * * *. Cf. Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Com'n, 162 U. S. 184, 16 S.Ct. 700, 40 L.Ed. 935; Louisville & N. R. Co. v. Behlmer, 175 U.S. 648, 20 S.Ct. 209, 44 L.Ed. 309; Standard Oil Co. v. United States, [2 Cir.,] 179 F. 614; Mutual Transit Co. v. United States, [2 Cir.,] 178 F. 664. There are limitations, moreover, in respect of the conduct to be controlled in addition to the foregoing limitations in respect of the carriers to be regulated. Even though the activities are those of common carriers by rail, the statute does not apply 'to the transportation of passengers or property * * * wholly within one State and not shipped to or from a foreign country from or to any place in the United States.' Section 1(2) (a, b) * * *. For many purposes, as for example in testing the validity of state taxation, merchandise is deemed to be in interstate commerce when it has started on its journey, though still in the possession of consignor or seller. Hughes Bros. Co. v. Minnesota, 272 U.S. 469, 475, 47 S.Ct. 170, 71 L.Ed. 359; Champlain Realty Co. v. Brattleboro, 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309, 25 A.L.R. 1195. Not so, however, in determining the application of this act. Transportation begins for that purpose, if not for others, when the merchandise has been placed in the possession of a carrier. Hughes Bros. Co. v. Minnesota,

supra; Coe v. Errol, 116 U.S. 517, 528, 6 S.Ct. 475, 29 L.Ed. 715; Diamond Match Co. v. Ontonagon, 188 U.S. 82, 95, 23 S.Ct. 266, 47 L.Ed. 349; Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 527, 31 S.Ct. 279, 55 L.Ed. 310. And 'wherever the word "carrier" is used in this chapter it shall be held to mean "common carrier." ' Section 1(3) * * *."

It is possible for a corporation, such as the defendants, to be subject to the provisions of Part 1 of the Interstate Commerce Act as to a major part of its normal operations, and yet as to a substantial percentage of its operations the type of transportation involved would not be subject to regulation by the Interstate Commerce Commission. Ordinarily a carrier that is wholly a carrier by water is not subject to regulation by the Interstate Commerce Commission. United States v. Munson Line, 283 U.S. 43, 51 S.Ct. 360, 75 L. Ed. 830. Many carriers by water have through bill of lading arrangements with railroads, which make the carriers by water subject to regulation by the Interstate Commerce Commission under § 1(a) of the Interstate Commerce Act above quoted.

The question in that case amounts to this: Where the corporation itself is subject to regulation by the Interstate Commerce Commission in the major part of its business, but as to certain types or methods of transportation it is not so subject, are its employees engaged in that type of transportation barred from coverage of the Fair Labor Standards Act because they are nevertheless an "employee of an employer subject to the provisions of sections 1—27 of Title 49" (Part 1) of the Interstate Commerce Act?

A somewhat similar situation was presented in Brittan v. Hudson & Manhattan, D.C., 50 F.Supp. 37, 38, and it was held that employees of a defendant railroad company, who were operating elevators in two large office buildings (the Hudson Terminal Buildings) which were built over a railroad terminal of the company, were not covered by the Fair Labor Standards Act and that the exemption of Section 13 (b) (2) of the Act applied to them, because they were employees "of an employer subject to the provisions of Part 1 of the Interstate Commerce Act." In another case, Anderson v. Southern Pacific Co., D. C., 62 F.Supp. 730, involving a situation more closely resembling the case at bar, it was held that the employees who were "engaged as lighter attendants or barge captains of lighters used for the storage or carriage of cargo in the Port of New York" were not covered by the Fair Labor Standards Act because of the exempting provisions of Sec. 13(b) (2). Those two cases seem to apply the language of the exemption too literally.

The Circuit Court of Appeals of this Second Circuit in Walling v. The Connecticut Co., 1946, 154 F.2d 552, has construed another exemption clause, § 13(a) (9), more strictly than the last two cited cases construed § 13(b) (2), and affirmed a decision of the District Court (D.C., 62 F. Supp. 733) in which it was held that power house employees were not exempt under § 13(a) (9) of the Act although their employer was a local trolley or motor bus carrier and § 13(a) (9) provided exemption of "any employee of a street, suburban, or interurban electric railway, or local trolley or motor bus carrier, not included in other exemptions contained in this section." The powerhouse supplied current for the local trolley line owned by the defendant, Connecticut Company, and to the extent of one percent to the New Haven Railroad, a parent corporation. The district court held [62 F.Supp. 735]:

"If the employer regularly and substantially engages in an otherwise non-exempt business other than the one for which the exemption was designed, however, strict construction of the exemption requires that it be not extended to that other business merely because the principal business of the employer is exempted. To do so would hardly be fair to those who must compete in that other business as their major activity."

This decision is in accord with the interpretation of § 13(b) (2) found in the First Annual Report of the Wage and Hour Administrator (1939) pages 24, 25.

In affirming the decision of the district court in the Connecticut Co. case [154 F.2d 553], Judge Frank wrote:

"There is little to add to what was said in the opinion below. Aside from § 13(a)(9), the employees are obviously within the Act, without regard to the percentage of power sold for use in interstate commerce. Defendant's contention comes to this: Since it is a 'local trolley carrier,' none of its employees is covered by the Act because § 13(a) (9) expressly exempts 'any employee' of such a carrier. Literally, that contention is correct. But it would mean that, no matter in what business, however extraneous to its functioning as a 'local trolley carrier,' defendant engaged, those employed in that extraneous business would be exempt. The policy of the Act, disclosed in its history, precludes the acceptance of such a literal construction."

Following the policy of the Act as thus expounded and supported by the decisions cited in the footnotes to Judge Frank's opinion, if these plaintiffs are engaged in the kind or method of transportation described in their opposing affidavit they would not be excluded from the coverage of § 7 of the Act. The plaintiffs' affidavits present a basic issue of fact which will have to be resolved at the trial. For that reason the defendant's motion for summary judgment in each case is denied. Settle the orders accordingly.