**ROLAND et al. v. UNITED AIRLINES, Inc.**

No. 46 C 420.

District Court, N. D. Illinois, E. D.

Feb. 14, 1947.

I. S. Dorfman, David S. Wald, and Moses, Bachrach & Kennedy, all of Chicago, Ill., for plaintiff.

Mayer, Meyer, Austrian & Platt, of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This action is brought under the Fair Labor Standards Act of 1938, Title 29, U.S.C.A. §§ 201–219. Defendant is a common carrier by air engaged in both interstate and foreign commerce. The 348 plaintiffs were employed during the war from September 1942 to January 1946 at defendant's "Modification Center," at Cheyenne, Wyoming, where defendant, under a contract with the Government, on a cost-plus-fixed fee basis, was engaged in the manufacture of parts for, and the modification, maintenance and equipment of military aircraft belonging to the United States.

The action is brought on behalf of plaintiffs and all other employees similarly situated, to recover for unpaid overtime, liquidated damages, attorney's fees and costs, under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201, 216(b).

Defendant filed a motion to dismiss the action, in the nature of a speaking demurrer, supported by the affidavit of J. A. Herlihy, its vice-president. Plaintiffs filed objections to the motion, supported by the affidavits of Charles R. Keppen, J. M. Steward, Anthony Carlin, Lyle E. Barkhurst,

Armond W. Kath, Helmer L. Sinner, W. E. Peden and Clifford Roland, seven of the former employees of the Modification Center.

The complaint alleges that the defendant from September 1942 through December 1945 operated a Modification Center at Cheyenne, Wyoming, during which period it manufactured certain specified and kindred aircraft parts which it assembled and installed in military aircraft flown to the center from factories located in states other than Wyoming, and that after such installation, these aircraft were then flown by army personnel to various points outside of Wyoming; that each of the plaintiffs was employed during all or a part of that period in defendant's Modification Center at Cheyenne, in the manufacture of airplane parts, or the installation of such parts, or the modification and equipping of war planes, or the maintenance of the Modification Center; that defendant and each of the plaintiffs were engaged during that period in interstate commerce and in the production of goods for interstate commerce; and that each of the plaintiffs was employed for work weeks longer than forty hours without receiving compensation from the defendant for such employment in excess of forty hours per week at a rate of one and one-half times the regular rate at which such employees were employed.

Section 7(a) (3) of the Act, 29 U.S.C.A. § 207(a) (3), provides:

"No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 3(b) (i) (j) of the Act, 29 U.S.C.A. § 203(b) (i) (j), provides:

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

"(i) 'Goods' means goods * * * wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Defendant in its motion to dismiss sets out, first, that it is a carrier by air subject to Part II of the Railway Labor Act, 45 U.S.C.A. §§ 181–188, and therefore, under the exemption contained in Section 13(a) (4) of the Fair Labor Standards Act, is not bound by the provisions of the Fair Labor Standards Act; and, second, that plaintiffs were not engaged in commerce or the production of goods for commerce, within the meaning of the Fair Labor Standards Act, and therefore not entitled to overtime compensation under the provisions of Section 7 (a) (3) and 16(b) of the Act.

Defendant contends that Section 13(a) (4) of the Act, 29 U.S.C.A. § 213(a) (4), exempts it from the requirements of Section 7(a) (3) of the Act, 29 U.S.C.A. § 207 (a) (3), and accordingly renders the provision there made for maximum hours of service and overtime compensation inapplicable to plaintiffs who worked at the Cheyenne Modification Center. The affidavit of J. A. Herlihy, Vice President of the Defendant, states that defendant since 1934 has been a "carrier by air, conducting such functions as are incidental to the business of transporting persons, property and mail by air" and that it is and at all times has been subject to the jurisdiction of the Civil Aeronautics Board as provided for in the Civil Aeronautics Act [49 U.S.C.A. § 401 et seq] * * *." Defendant, however, admits that this Act is not in question here.

Section 13(a) (4) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (4), provides:

"The provisions of section \* \* \* 207 of this title (Section 7 of the Act) shall not apply with respect to \* \* \* (4) any employee of a carrier by air subject to the provisions of sections 181–188 of Title 45 (USCA)."

Sections 181–188 of Title 45 U.S.C.A. were added by the Congress in 1936 to the Railway Labor Act, as Part II thereof, 45 U.S.C.A. §§ 151–163, and concern carriers by air. Section 181 states that the provisions of the Railway Labor Act "are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce \* \* \* and every air pilot or other person who performs any work as an employee or subordinate official of such carrier." Section 182 provides that the "duties, requirements, penalties, benefits, and privileges prescribed and established by the Railway Labor Act shall apply to said carriers by air and their employees." Section 183 permits "an employee or a group of employees and a carrier or carriers by air" to invoke the mediation services of the National Mediation Board in the event of a labor dispute, and Section 184 provides for the submission of certain labor disputes to a regional board of adjustment for air carriers and their employees. Section 185 provides for the further submission of such disputes to a National Air Transport Adjustment Board. Sections 186–188 relate to purely formal matters.

The question for decision here is whether Section 13(a) (4) of the Fair Labor Standards Act, which excepts from the provisions of Section 7 of the Act "any employee of a carrier by air subject to the provisions of sections 181–188 of Title 45, [USCA]," exempts an air carrier from compliance with the provisions for maximum hours of service and overtime compensation contained in Section 7, when applied to employees of a carrier who is employed in a business other than its air transportation business.

The carrier by air described in the exemption is one who is "subject to the provisions of sections 181–188 of Title 45, [USCA]." By force of the Civil Aeronautics Act, air carriers "subject to the provisions of sections 181–188 of Title 45, [USCA]," are those carriers which hold certificates issued to them by the Board, 49 U.S.C.A. § 481(1) (4). The exemption of the Fair Labor Standards Act refers to employees of those carriers by air whose business is regulated under the Civil Aeronautics Act. That business is "air transportation" and not any other business in which a carrier may chance to engage. In regulating that business the Civil Aeronautics Board was empowered "to promote safety of flight in air commerce by prescribing \* \* \* rules and regulations governing, in the interest of safety, the maximum hours \* \* \* of service of airmen, and other employees, of air carriers." 49 U.S.C.A. § 551(a) (5). The "airmen, and other employees, of air carriers" to which reference was intended are those employees engaged in the business with which the Civil Aeronautics Act generally and exclusively was concerned, that is, transportation by air, not employees in any other business which is unregulated under the statute.

Defendant contends that the court should give a literal construction to the words "any employee" as used in Section 13(a) (4), and further urges that this section exempts employees who are not engaged in the air transportation business of an air carrier, provided they work at a modification center, because the character of work performed at such center is so closely integrated with regular carrier operations as to be a part thereof. It cites two related opinions rendered by the National Labor Relations Board, in the matter of Northwest Airlines, Inc., 47 N.L.R.B. 498, and 51 N.L.R.B. 1012, as a result of which the modification center employees were placed under the Railway Labor Act (Secs. 181–188, Title 45 U.S.C.A.), and contends that since Sec. 13(a) (4) applies to "any employee of a carrier by air subject to the provisions of sections 181–188 of Title 45" the employees of the Cheyenne Modification Center were exempted from the Act.

In Nelson v. Agwilines, Inc., decided by the District Court for the Southern District of New York, and reported in 70 F.Supp. 497, 500. In denying a motion by defendant for summary judgment based on this exemption, the court said:

"The question in that case amounts to this: Where the corporation itself is subject to regulation by the Interstate Commerce Commission in the major part of its business, but as to certain types or methods of transportation it is not so subject, are its employees engaged in that type of transportation barred from coverage of the Fair Labor Standards Act because they are nevertheless an 'employee of an employer subject to the provisions of sections 1–27 of Title 49' (Part 1) of the Interstate Commerce Act [49 U.S.C.A. §§ 1–27]?

"A somewhat similar situation was presented in Brittan v. Hudson & Manhattan [R. Co.], D.C., 50 F.Supp. 37, 38, and it was held that employees of a defendant railroad company, who were operating elevators in two large office buildings (the Hudson Terminal Buildings) which were built over a railroad terminal of the company, were not covered by the Fair Labor Standards Act and that the exemption of Section 13(b) (2) of the Act applied to them, because they were employees 'of an employer subject to the provisions of Part 1 of the Interstate Commerce Act.' In another case, Anderson v. Southern Pacific Company, D.C., 62 F.Supp. 730, involving a situation more closely resembling the case at bar, it was held that the employees who were 'engaged as lighter attendants or barge captains of lighters used for the storage or carriage of cargo in the port of New York' were not covered by the Fair Labor Standards Act because of the exempting provisions of Sec. 13(b) (2). Those two cases seem to apply the language of the exemption too literally.

"The Circuit Court of Appeals of this Second Circuit in Walling v. The Connecticut Co., 1946, 154 F.2d 552, has construed another exemption clause, § 13 (a) (9), more strictly than the last two cited cases construed § 13(b) (2), and affirmed a decision of the District Court (62 F.Supp. 733) in which it was held that power house employees were not exempt under § 13(a) (9) of the Act although their employer was a local trolley or motor bus carrier and § 13(a) (9) provided exemption of 'any employee of a street, suburban, or interurban electric railway, or local trolley, or motor bus carrier, not included in other exemptions contained in this section.' The power house supplied current for the local trolley line owned by the defendant, Connecticut Company, and to the extent of one percent to the New Haven Railroad, a parent corporation. The district court held [62 F.Supp. 735]:

" 'If the employer regularly and substantially engages in an otherwise non-exempt business other than the one for which the exemption was designed, however, strict construction of the exemption requires that it be not extended to that other business merely because the principal business of the employer is exempted. To do so would hardly be fair to those who must compete in that other business as their major activity.'

"This decision is in accord with the interpretation of § 13(b) (2) found in the First Annual Report of the Wage and Hour Administrator (1939) pages 24, 25.

"In affirming the decision of the district court in the Connecticut Co. case [154 F.2d 553] Judge Frank wrote:

" 'There is little to add to what was said in the opinion below. Aside from § 13(a) (9), the employees are obviously within the Act, without regard to the percentage of power sold for use in interstate commerce. Defendant's contention comes to this: Since it is a "local trolley carrier," none of its employees is covered by the Act because § 13(a) (9) expressly exempts "any employee" of such a carrier. Literally, that contention is correct. But it would mean that, no matter in what business, however extraneous to its functioning as a "local trolley carrier," defendant engaged, those employed in that extraneous business would be exempt. The policy of the Act, disclosed in its history, precludes the acceptance of such a literal construction.'

"Following the policy of the Act as thus expounded and supported by the decisions cited in the footnotes to Judge Frank's opinion, if these plaintiffs are engaged in the kind or method of transportation described in their opposing affidavit they would not be excluded from the coverage of § 7 of the Act. * * * For that reason the defendant's motion for summary judgment in each case is denied."

In the case of United States v. American Trucking Association, 310 U.S. 534, 543, 60 S.Ct. 1059, 1062, 84 L.Ed. 1345, the Supreme Court was called upon to construe Sec. 13(b) (1) of the Fair Labor Standards Act which excepted from the maximum hours provisions of Section 7, 29 U.S.C.A. § 207, any employee of a motor carrier "with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 * * * of the Motor Carrier Act, 1935," 49 U.S.C.A. § 304. Section 204(a) of the Motor Carrier Act, 1935, authorized the Interstate Commerce Commission to regulate interstate motor carriers, and to that end to establish reasonable requirements with respect to "qualifications and maximum hours of service of employees." The question presented for decisions was whether clerical, storage and other non transportation workers of interstate carriers by motor vehicle were precluded from the benefits of Section 7 of the Fair Labor Standards Act by virtue of the foregoing exemption provided by Section 13(b) (1) of the Act. The Supreme Court, in holding that the employees mentioned in Section 204(a) of the Motor Carrier Act, and whose maximum hours of service were subject to regulation by the Interstate Commerce Commission, were those employees only of the motor carrier whose activities affect the safety of operation of its carriage business, and therefore that non-transportation employees were entitled to the benefits of Section 7 of the Fair Labor Standards Act, said [310 U.S. 534, 60 S.Ct. 1064]:

"The language here under consideration, if construed as appellees contend, gives to the Commission a power of regulation as to qualifications and hours of employees quite distinct from the settled practice of Congress. That policy has been consistent in legislating for such regulation of transportation employees in matters of movement and safety only. The Hours of Service Act [45 U.S.C.A. § 61 et seq.] imposes restrictions on the hours of labor of employees 'actually engaged in or connected with the movement of any train.' The Seamen's Act [38 Stat. 1164 et seq.] limits employee regulations under it to members of ship's crews. The Civil Aeronautics Authority has authority over hours of service of employees 'in the interest of safety.' * * * In the face of this course of legislation, coupled with the supporting interpretation of the two administrative agencies concerned with its interpretation, the Interstate Commerce Commission and the Wage and Hour Division, it cannot be said that the word 'employee' as used in Section 204(a) is so clear as to the workmen it embraces that we would accept its broadest meaning. The word, of course, is not a word of art. It takes color from its surroundings and frequently is carefully defined by the statute where it appears.

"We are especially hesitant to conclude that Congress intended to grant the Commission other than the customary power to secure safety in view of the absence in the legislative history of the Act of any discussion of the desirability of giving the Commission broad and unusual powers over all employees.

\* \* \* \* \* \*

"The Commission and the Wage and Hour Division, as we have said, have both interpreted Section 204(a) as relating solely to safety of operation. In any case such interpretations are entitled to great weight. This is peculiarly true here where the interpretations involve 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' "

The interpretations, rulings and opinions of the Administrator of the Fair Labor Standards Act, while not controlling upon the court, nevertheless are based upon an informed judgment to which resort may be had by the court in ascertaining the meaning of the Act. United States v. American Trucking Association, supra. In 1943 the Administrator rendered an opinion relative to the coverage of the Act in the case of an air transport company, a number of whose employees were working exclusively on premises apart from the regular airline base in producing aircraft parts and installing them on army planes manufactured by another aircraft com-

pany. The planes were flown in by the army for the installation of the parts and then ferried out. The Administrator said:

"I agree with your position that the subject employees engaged in producing and installing aircraft parts in the planes in question are engaged in the production of goods for interstate commerce within the general coverage of the Act and that they are not exempt under Section 13(a) (4).

"It would appear that the production and installation of aircraft parts as a part of the manufacture of airplanes produced and used by others, and not as a part of the maintenance or repair of planes used by the airlines in their transportation activities, constitute operations which are not incidental to the usual transportation activities, carried on by air carriers. Such manufacturing operations were not within the contemplation of Congress when it applied Title II of the Railway Labor Act to air carriers and when it exempted carriers subject to that act from the Wage and Hour requirements of this Act under Section 13(a) (4).

"Therefore, with respect to those manufacturing and installation operations, the subject company cannot be considered 'a carrier by air subject to the provisions of Title II of the Railway Labor Act' any more than an independent manufacturer of aircraft parts could be so considered. The mere fact that such manufacturing and installation activities are carried on by a corporation which also engages in air carrier operations subject to the Railway Labor Act does not mean that the employees engaged in manufacturing and installation are employees of a carrier by air subject to that Act. Such employees are, rather, employees of an aircraft parts manufacturer, which is in turn owned by or affiliated with an air carrier subject to the Railway Labor Act."

■ It is my opinion that the activities carried on by United Air Lines at its Modification Center at Cheyenne were extraneous to its functioning as a carrier by air and therefore I believe that those employees who engaged in such extraneous business are not, under Sec. 13(a) (4) (29 U.S.C.A.) of the Act, exempt from the provisions of Section 7 of the Fair Labor Standards Act. I believe the Railway Labor Act applies only to carriers and their employees that are engaged in carrier or air transport activities, and that the Fair Labor Standards Act applies to a carrier and its employees that is engaged in non-transportation activities such as were carried on at the Modification Center at Cheyenne. Affidavits of plaintiff show that the Cheyenne Modification Center from and after September, 1942, was a distinct industrial enterprise with its own buildings, machinery, stockpile and employees, operated by defendant as a war contractor with the Government to complete the fabrication of military aircraft for combat service.

Defendant's motion to dismiss also raises the question of whether plaintiffs were engaged in the production of goods for commerce as those terms are defined in the Act. Defendant insists that the aircraft on which plaintiffs worked were not "goods" within the meaning of the Act; and that work done on aircraft of which the United States Government had already taken possession was not "commerce" within the meaning of the Act.

On December 10, 1946, the Circuit Court of Appeals for the Seventh Circuit in the case of Bell et al. v. Porter et al., 159 F.2d 117, 118, held:

"In support of their contention appellants argue that Government-owned goods shipped by the Government across state lines is an administrative act of the sovereign and is not interstate commerce, and that the word 'commerce' as used in the Fair Labor Standards Act is limited to 'commercial or business commerce.'

"On the first point raised it will be enough to say that cost-plus-fixed-fee contractors with the Government engaged in war production, are not agents of the Government and do not share the Government's sovereign immunities. [State of] Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9. And it has been held that the production of goods for interstate transportation by or for the Government is production for commerce within the meaning of the Act. [Citing Umthun v. Day & Zimmerman [235

Iowa 293], 16 N.W.2d 258; Timberlake v. Day & Zimmerman [D.C.], 49 F.Supp. 28; Clyde v. Broderick [10 Cir.], 144 F.2d 348, 351.]

"As to the second point, we note that the Act is made applicable to any employee 'who is engaged in commerce or in the production of goods for commerce.' Section 7(a), 29 U.S.C.A. § 207(a). By § 3(b) of the Act, commerce is defined as 'trade, commerce, transportation * * * from any State to any place outside thereof.' But nowhere in the Act is it suggested that Congress intended that transportation effected by the Government or of Government goods be treated differently from all other transportation; hence we believe, as the court did in the case of Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518, that when Congress defined 'commerce' in the Act, it intended to give the term the broadest possible meaning, so as to include all transactions, conditions and relationships as have been heretofore known and acknowledged as constituting commerce in the constitutional sense."

 Relying on the above decision I hold that the employees in the instant case were engaged in commerce and in the production of goods for commerce as those terms are used in the Act.

On the question of whether the plaintiffs may bring this action on behalf of themselves, and for and on behalf of all employees similarly situated: Section 16(b) of the Act provides:

"Action to recover * * * may be maintained * * * by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated."

In the case of Lofther v. First National Bank of Chicago, D.C., 45 F.Supp. 986, 988, this court thus construed the foregoing provision of Section 16(b):

" * * * Section 16(b) of the Fair Labor Standards Act of 1938 does not permit a plaintiff or plaintiffs to maintain a true class action, but that the real purpose of the Statute is to permit all 'similarly situated' employees, where they seek additional compensation, or, as here, overtime compensation, alleged to be due them under the Act, to join their several actions in one proceeding, thus obviating a multiplicity of suits; or to permit them to intervene in an action already initiated by an employee or employees 'similarly situated'; or to permit employees to designate an agent or representative to maintain an action in their behalf."

In Fowkes v. Dravo Corporation, 75 F. Supp. 514, decided by the District Court for the Eastern District of Pennsylvania, involving the extent or duration of the period within which intervention in a pending action was permissible by "employees similarly situated," the court said:

"It is submitted that the greatest justice is best accomplished in cases such as this to allow the fullest period of time for those employees who desire to have the benefit of the Court's decree to come into the proceedings.

"Accordingly, the opinion of this court, dated August 13, 1945 [D.C., 62 F.Supp. 361], is amended so that the case shall remain open for all parties and intervenors until time of final judgment when the court shall determine whether the judgment shall be binding only upon those who have joined, or whether to allow others similarly situated to be brought in by appropriate supplementary proceedings."

In order to obviate a multiplicity of suits, the case at bar will remain open for all parties until time of final judgment when the court will determine whether the judgment will be binding only upon those who have joined or whether to allow others similarly situated to be brought in by appropriate supplementary proceedings.

My attention has just been directed to the cases brought by various of the Modification Center employees at St. Paul against Northwest Airlines, in the United States District Court of Minnesota, Jackson v. Northwest Airlines, 70 F.Supp. 501, where Judge Nordbye held that the plaintiff employees at a Modification Center were entitled to the protection of the Wage and Hour Act, the relationship of their work to defendant's carrier activities being

too tenuous, negligible and remote as to be a part of them and to thereupon entitle them to be covered by the Railway Labor Act. With this decision I am in accord, having reached the same conclusion in the instant case.

Defendant's motion to dismiss is overruled, and defendant is given 90 days in which to answer.