**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant-Cross Appellee,**

v.

**COLONNADES, INC., etc., et al., Defendants-Appellees-Cross Appellants.**

No. 72–1029.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1973.

Rehearing Denied Feb. 9, 1973.

Richard F. Schubert, Solicitor of Labor, Bessie Margolin, Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Solicitor, Norman H. Winston, Associate Reg. Sol., Dept. of Labor, Atlanta, Ga., Murray Battles, Dept. of Labor, Office of the Solicitor, Birmingham, Ala., Carin Clauss, U. S. Dept. of Labor, Office of the Solicitor, Donald Shire, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Ronald Sales, Palm Beach, Fla., for defendants-appellees.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

The Secretary of Labor brought suit against Colonnades, Inc., and its president, John D. MacArthur under the Fair

Labor Standards Act [1] to enjoin them from violating the Act's minimum wage, overtime, and record keeping provisions and to restrain them from withholding payment of minimum wage and overtime compensation due certain named employees.

The District Court

1. Enjoined Colonnades from violating the Act's overtime requirements [2] as to those of its employees engaged in construction work and from withholding overtime compensation due them in the amount of $6,612.88 including interest;

2. Denied injunctive relief against John D. MacArthur personally;

3. Denied the Secretary's motion to amend his complaint to include some 52 other employees alleged also to have been affected by overtime violations; and

4. Held that prior to the 1966 amendments to the Act the defendants were not within coverage under either Section 203(s)(1), the applicable dollar amount of gross volume of sales, or Section (s)(4), the definition of a construction enterprise.[3]

The District Court found that Colonnades had violated the Act's overtime requirements in that Colonnades' construction employees were not exempt under Section 213(b)(8)[4], the exemption to the overtime provision for any employee of a hotel. The Court further found that Colonnades' construction employees came within the Act for the first time as a result of the 1966 amendments under Section 203(s)(1)[5] as amended. By coming within the Act for the first time under the 1966 Amendments, Colonnades' construction employees would be

1. 29 U.S.C. § 201 et seq., hereinafter called the Act.

2. 29 U.S.C. § 207.

3. Prior to the 1966 Amendments to the Act Section 203(s)(1) stated
(s) "Enterprise engaged in commerce or in the production of goods for commerce" means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:
(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more;
and Section 203(s)(4) stated
(s) "Enterprise engaged in commerce or in the production of goods for commerce" means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

* * * * *

(4) any such enterprise which is engaged in the business of construction or reconstruction, or both, if the annual gross volume from the business of such enterprise is not less than $350,000;

4. Section 213(b)(8), 29 U.S.C. § 213(b)(8) states:
The provisions of section 207 of this title shall not apply with respect to—
(8) any employee employed by an establishment which is a hotel . . .

5. Section 203(s)(1) as amended states:
(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—
(1) during the period February 1, 1967, through January 31, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) or is a gasoline service establishment whose annual gross volume of sales is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated), and beginning February 1, 1969, is an enterprise whose an-

considered "newly covered" and would be subject to the "catch-up provisions" of Section 207(a)(2).[6]

### Facts

John D. MacArthur is the principal owner of Colonnades, Inc., which owns and operates hotels in Palm Beach County, Florida. The center of the MacArthur hotel operation is the Colonnades Beach Hotel, fronting the Atlantic Ocean. Five smaller hotels are located nearby and are connected to the main hotel by colonnaded walkways. This hotel complex has 400 guest rooms, a large convention hall accommodating 500 people, a bowling and putting green, swimming pool, dining facilities, and three kitchens. MacArthur purchased the hotel in 1960 or 1961. At that time the hotel was much smaller, with only a little over 100 rooms. MacArthur was advised to tear down the original buildings and start over from scratch. He testified that he "decided they were wrong" and "proceeded to fix it up." Extensive construction projects were undertaken. Two major construction projects were the addition of 139 new rooms on top of the main building and the addition of several floors on top of the convention center. These additions were constructed by numerous independent contractors and subcontractors. Also, MacArthur was continually improving and changing the premises. The labor for this constant improvement program was performed by employees on the hotel's payroll. In the joint stipulation the parties agreed that Colonnades' construction employees performed the following tasks:

(a) Applied waterproof stucco to the exterior walls of hotel buildings,

(b) Dug ditches and connected piping for a sprinkler system on the hotel lawn,

(c) Erected forms and poured concrete in those forms to construct an addition to the seawall on the hotel's ocean-front,

(d) Received construction materials from suppliers, moved those materials onto the hotel elevators, and unloaded those materials on upper floors of the hotel for use by employees of outside contractors,

(e) Erected forms and poured concrete to build sidewalks connecting various hotel buildings,

(f) Constructed outside steps to be used as fire escapes on hotel buildings,

(g) Constructed a penthouse apartment on top of the main hotel building, and

(h) Cleaned up construction debris left by employees of various outside independent contractors who were engaged to build four additional floors on the main hotel building.

During the period specified in the complaint (the period since April 7, 1967) the employees named were not paid overtime for workweeks in excess of forty hours.

Both parties appeal from those findings not in their favor.

We affirm the District Court's decision as to:

1. The denial of injunctive relief against John D. MacArthur personally, and

2. The finding that Colonnades' construction employees were not subject to the exemption to the overtime provisions of the Act under Section 213(b)(8).

nual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated);

6. The District Court erred in its findings of fact and conclusions of law when it

stated that "overtime compensation shall be computed with reference to Sections 6(b) and 7(a)(2)." Section 6(b) refers to the minimum wage provisions and not to overtime compensation.

We reverse the District Court's decision as to:

1. The refusal to allow the Secretary to amend his complaint to include additional employees of Colonnades and

2. That Colonnades did not come within the definition of a construction enterprise within Section 203(s)(4).

### The Law

**A.** *Injunctive Relief Against John D. MacArthur*

Section 203(d) defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .".

The Secretary claimed that Mac-Arthur

(1) participated in the day-to-day supervision of the activities giving rise to the violations;

(2) had the authority to hire and fire the employees in question; and

(3) supervised the supervisors.

The Secretary contends that "courts have repeatedly held that corporate officers who have a proprietary interest in their companies and who actively participate in their day-to-day affairs" are proper party defendants under Section 217 [7] and can be enjoined from continuing to withhold unpaid wages due to affected employees.

The District Court found that "an injunction directed to MacArthur personally would be inappropriate and unnecessary." It said "the evidence indicated that the management and operations of the hotel were regularly supervised by others."

"Each case must be considered in light of the total situation or whole activity to determine whether an employer-employee relationship exists." Wirtz v. Lone Star Steel Company, 5 Cir., 405 F.2d 668 at 669 and Wirtz v. Soft

Drinks of Shreveport, Inc., 336 F.Supp. 950, 957 (W.D.La.1971). The total employment situation should be considered in regard to the acts MacArthur performed "in the interest of the employer in relation to the employee," Shultz v. Chalk-Fitzgerald Construction Co., 309 F.Supp. 1255 at 1257 (D.C.1970). Also to be considered are the "economic realities" of the situation, Goldberg v. Whittaker House Cooperative, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

■ We are not inclined to reverse the action of the District Court as to MacArthur personally. As to the corporation, the injunction should not be disturbed.

**B.** *The Section 213(b)(8) Exemption*

Section 213(b)(8) provides as follows:

The provisions of Section 207 (overtime) shall not apply with respect to any employee employed by an establishment which is a hotel . . .

■ The District Court held as to the employees here involved that Colonnades was not within the exemption. It found as follows:

The Colonnades is not an unusual or atypical hotel from the standpoint of the services and facilities it provides for its guests. The hotel is unusual, however, in that a full-time crew is maintained for the principal purpose of building, remodeling, and rendering substantial alterations to the premises . . . (Colonnades claims) that the hotel's unusual policy of continuing renovation and change should not cause it to lose the exemption.

In the court's view the central flaw of this argument is the assumption that the 'unusual' policies of this particular hotel are immaterial to the exemption. The primary function of the construction crew had little if anything to do with the daily operation of

---

7. Section 217, 29 U.S.C. § 217 is the applicable statute for injunctive proceedings under the Fair Labor Standards Act.

the hotel as a facility for the accommodation of guests. A hotel is essentially a service facility. The 13(b)(8) exemption contemplates that the duties of the establishment's employees will be reasonably related to and directed toward that end.

The literal interpretation and application of the exemption which the hotel urges runs contrary to the over-all purpose of the Act and the exemption itself.

The record amply supports this view. Whether employees are exempt from the requirements of the Fair Labor Standards Act involves a question of fact. Walling v. General Industries Co., 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947) and Hodgson v. Klages Coal and Ice Co., 6 Cir. 1970, 435 F.2d 377, 382, cert. den. 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137. Therefore, the findings of fact made by the District Court may not be set aside unless clearly erroneous. Walling v. General Industries Co., supra at 550; Hodgson v. Klages Coal and Ice Co., supra at 382, and Wirtz v. Atlanta Life Ins. Co., 6 Cir., 1963, 311 F.2d 646, 647.

An exemption from the coverage of the Act "must be narrowly construed." Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) and Mitchell v. Stenson, 1 Cir., 1954, 217 F.2d 210, 214. The exemptions must be applied only to those "plainly and unmistakably within its terms and spirit." Phillips, Inc. v. Walling, supra at 493, 65 S.Ct. at 808. See also Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed. 2d 393 (1960). This strict construction of the exemption requires that it not be extended to another business merely because the principal business of the employer is exempted, Walling v. Connecticut Co., 62 F.Supp. 733, 735 (D.C.Conn. 1945), affirmed 2 Cir., 1946, 154 F.2d 552.

Therefore, we agree that Colonnades' construction employees [8] did come within the Section 213(b)(8) exemption.

## C. *Amending the Complaint*

The plaintiff's original complaint asked for relief for 64 employees. During the trial, the plaintiff sought to amend the complaint to add an additional 63 employees. This would involve approximately $27,000 additional in back wages.

The original list of 64 names resulted from a list submitted to a Wage and Hour Compliance Officer prior to the filing of the complaint. The plaintiff sought to obtain from the defendant its payroll records,[9] granted by the District Court. The payroll records were inspected. From these records the plaintiff was able to uncover all the names of the construction workers employed during the pertinent period, as well as the information necessary to compute the full extent of the wage underpayments. The trial began on November 16, 1972. The trial court denied the plaintiff's motion to amend, stating that no case "cited to the court supports the motion that the complaint may be so drastically amended on the day of the trial."

Colonnades claims that up to trial it treated the suit as "a $6,000 lawsuit involving 50 people." It then states that if the plaintiff had amended his complaint prior to trial, Colonnades would have "prepared for a $35,000 lawsuit involving substantially over 100 employees, but (it) had no way of knowing if any additional employees would be added."

The applicable part of Rule 15(b) states:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and

8. The Fair Labor Standards Act may be applied to a part of an employer's business. Davis v. Goodman Lumber Co., 4 Cir., 1943, 133 F.2d 52, 54, and cases cited therein.

9. Rule 34, F.R.Civ.P.

the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

An amendment of a complaint will be allowed "unless the opposing party is actually prejudiced." 3 Moore's Federal Practice, § 15.14 at p. 1011 (2d ed. 1968). This prejudice must "put the objecting party to some serious disadvantage," and "it is not enough that (the objecting party) advances an imagined grievance or seeks to protect some tactical advantage." Wright & Miller, Federal Practice and Procedure: Civil § 1495. Thus, the party opposing the amendment "must be seriously prejudiced" in his "defense on the merits." *Id.*

Colonnades does not make any allegation as to how it was prejudiced in its defense except for its vague statement that it would have defended case differently if it had known more money or a greater number of employees were involved.[10]

The issue on this point was really one of mathematical computation. Colonnades had the records in its possession. The identity of the employees and their hours of work were there set forth.

The District Court should have allowed the amendment, Shultz v. Mack Farland & Sons Roofing Co., 5 Cir., 1969, 413 F.2d 1296, 1302 and Monod v. Futura, Inc., 10 Cir., 1969, 415 F.2d 1170, 1174.

D. *Inclusion of Colonnades under Section 203(s)(4)*

■ The District Court held that Colonnades did not come within the "old" Section 203(s)(4) as a construction enterprise. Unpaid overtime compensation was therefore computed under Section 207(a)(2), which covers newly covered employees who come within the Act for the first time under the 1966 Amendments. The District Court held that Colonnades came within the Act for the first time under the 1966 Amendments by virtue of Section 203(s)(1) as amended:

"The plaintiff makes much of the fact that the defendant had expenditures for construction in excess of $350,000 during the relevant periods. But this does not mean at all that the hotel was in the business of construction. To the contrary, it was at all times engaged in the business of operating a hotel. The hotel had no profit or receipts of any kind from construction. Its construction activities consisting solely of expanding and modernizing existing structures and facilities for its own account. The court finds and concludes that the defendant hotel was not and is not engaged in the business of construction within the meaning of the Act."

Colonnades claims that:

(It) was not engaged in 'the business of construction.' It was engaged in the business of operating a hotel. Any 'construction' activities consisted simply of expanding and modernizing the existing functioning hotel and were incidental to the business of operating the hotel—not a separate business activity.

Colonnades' annual gross volume must exceed $350,000 from the construction business for Colonnades to come within the "old" Section 203(s)(4).[11] Colonnades stipulated that in every year in question there was "in excess of $350,000 in addition to our capital assets on the premises."

"Annual gross volume" should not be narrowly construed. Wirtz v. Allen Green & Associates, Inc., 6 Cir., 1967, 379 F.2d 198, 200. The Court in *Allen*

---

10. If Colonnades had been seriously prejudiced and could show it, the District Court under Rule 15(b), F.R.Civ.P. could have granted Colonnades a continuance to meet the changed situation so that Colonnades could have cured the prejudice.

11. See note 3 supra.

*Green* said that "annual gross volume" does not mean sales and agreed with the District Court below that it meant "any gain of capital assets derived from construction activities . . . to the extent of their fair market value, irrespective of whether the assets were in the form of money or its equivalent in property." Wirtz v. Allen Green & Associates, Inc., supra at 199. The Court in *Allen Green* said it was the purpose of Congress to "include in the coverage of the Act employees of construction contractors who build for themselves as well as those who build for others." Wirtz v. Allen Green & Associates, Inc., supra at 200. Therefore, we must hold that the District Court construed too strictly the definition of "business" in Section 203(s)(4).

The District Court on remand will compute the overtime compensation due to the affected employees under Section 207(a)(1).

Affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.