[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 22, 2009
THOMAS K. KAHN
CLERK

No. 09-12657
Non-Argument Calendar

_____

D. C. Docket No. 08-22585-CV-UU

MARIO MENA,
and all others similarly situated under 29 USC
216(B),

Plaintiff-Appellant,

versus

MCARTHUR DAIRY, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 22, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

This appeal stems from a suit brought by Plaintiff-Appellant Mario Mena,

on behalf of himself and others similarly situated, against Defendant-Appellee

McArthur Dairy, LLC ("McArthur") for alleged violations of the overtime pay

provision of the Fair Labor Standards Act ("FLSA"), found in 29 U.S.C.

§ 207(a)(1).

## I. Facts

McArthur is a Florida-based subsidiary of Dean Foods Company ("Dean

Foods") that produces and distributes dairy products. Many of the products that

McArthur distributes are produced or manufactured by Dean Foods' plants in other

states. These products are delivered to McArthur's facility in Miami, Florida,

where they arrive pre-packaged and ready for delivery. They then are loaded onto

McArthur's delivery trucks and delivered to customers.

McArthur is registered with the Federal Motor Carrier Safety Administration

of the United States Department of Transportation (DOT) and operates under an

assigned DOT Number.[1] McArthur is registered as a private motor carrier

authorized to haul refrigerated food and dairy products. The company requires that

its route and delivery drivers comply with the Federal Motor Carrier Safety

Regulations ("FMCSR"). McArthur maintains all required DOT records and a

---

[1] McArthur claims that it operates under DOT Number 85840, but the "Company Snapshot" provided by McArthur indicates that its DOT Number is 822871. In any event, this is irrelevant as Mena does not dispute that McArthur is registered with the DOT.

"driver qualification" file for each driver as required by the FMCSR. In the two years prior to March 2009, McArthur's trucks were subjected to 22 DOT inspections and its drivers were inspected 39 times.

Mena was employed by McArthur as a "swing driver" from approximately March 7, 2007, to September 11, 2008, at which time McArthur terminated his employment. Mena's primary responsibilities included substituting for absent route drivers and delivering products to McArthur's customers in Florida, such as Wal-Mart, Publix, and Target. One of the customers to whom Mena delivered products was Sky Chefs, a catering company that supplies food and beverages for airlines operating out of the Fort Lauderdale-Hollywood and Miami International Airports. In performing these duties, Mena regularly drove his truck on public streets and interstate highways, including I-95. In compliance with DOT regulations, Mena conducted a safety pre-inspection before driving any of McArthur's trucks. Moreover, Mena kept a notebook containing an inspection checklist "in case [he was] stopped by the DOT."

After being terminated by McArthur, Mena brought the instant case. In his complaint, Mena alleged that during his employment with McArthur he earned twenty-two dollars per hour. Mena claimed that he worked an average of seventy-two hours per week, but was only paid for forty per week. He alleged that under

3

the FLSA, he was entitled to compensation at one-and-one-half times his regular hourly rate for all hours worked in excess of forty per week. Moreover, Mena alleged that his "paystubs reflect that he was not paid any amount of wages for hours worked in excess of forty hours weekly which would constitute a minimum wage violation."

McArthur filed a motion for summary judgment, in which it argued that Mena was exempted from the FLSA's overtime pay provision by virtue of the "motor carrier exemption" found in 29 U.S.C. § 213(b)(1). The district court agreed, finding that Mena met the two requirements needed to trigger the motor carrier exemption: (1) Mena was employed by a carrier whose transportation is subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act; and (2) Mena engaged in activities directly affecting the safety of operation of motor vehicles while moving property in interstate commerce. Additionally, the court determined that any reference to a minimum wage claim was accidentally included in Mena's complaint or, alternatively, was meritless. This appeal followed.

## II. Discussion

4

A.  Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and quotation omitted).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Exemptions to the FLSA are construed narrowly and against the employer. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008).  The burden is on the employer to establish entitlement to an exemption.  Id.

B.  Overtime Claim and the Motor Carrier Exemption

The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  This provision, however, "shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1).  The Secretary of Transportation is deemed to have such

5

power, and thereby the motor carrier exemption is triggered, if two requirements are met: (1) the employee is employed by a carrier "whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act"; and (2) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). "[T]he Secretary of Transportation need not actually exercise his power to regulate under the Motor Carrier Act; an exemption under section 13(b)(1) is created so long as the Secretary has the authority to regulate over a particular category of employees." Spires v. Ben Hill County, 980 F.2d 683, 686 (11th Cir. 1993).

Mena does not appear to dispute that the first prong of the exemption was satisfied because the Secretary not only has power to exercise jurisdiction over McArthur, but has in fact exercised such jurisdiction. McArthur is registered with the DOT and has an assigned DOT registration number. McArthur's trucks and drivers have been the subject of DOT inspections and the company maintains records as required by DOT regulations. Mena, therefore, clearly was employed by a carrier that is subject to the jurisdiction of the Secretary of Transportation.

6

Turning to the second prong, we must determine whether Mena personally engaged in activities directly affecting the safety of operation of motor vehicles in transportation on public highways of property in interstate commerce. Mena concedes that he drove on public highways and that this affected the safety of operation of motor vehicles. Thus, we need only address whether he transported property in interstate commerce.

It is undisputed that Mena's job activities took place wholly within the state of Florida. Nonetheless, for the purposes of the Motor Carrier Act, "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." Walters v. American Coach Lines of Miami, Inc., 575 F.3d 1221, __ (11th Cir. 2009) (citations omitted). A critical factor in determining the shipment's essential character is the shipper's "fixed and persisting intent" at the time of the shipment. 29 C.F.R. § 782.7(b)(2); see also Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 223-24 (2d Cir. 2002).[2]

---

[2] The Interstate Commerce Commission has held that there is not fixed and persisting intent to engage in interstate commerce where: (1) "[a]t the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage"; (2) "the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated"; and (3) "transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage." 29 C.F.R. § 782.7(b)(2). Some courts have

In the instant case, we are persuaded that Mena transported property in interstate commerce. Uncontroverted testimony establishes that much of the property that Mena transported previously had been manufactured in other states by McArthur's parent company and delivered to McArthur's Miami warehouse. Because McArthur delivered dairy and other refrigerated products to customers, the property transported was perishable and usually of a reasonably short shelf-life. The property was pre-packaged and not modified once it reached McArthur's warehouse. Cf. Roberts, 921 F.2d at 816 (finding that the fixed and persisting intent test was not satisfied where shipper did not intend for the interstate shipment of raw soybeans, but rather expected them to be processed intrastate into "a new commodity, one that had been materially changed in 'character, utility, and value'" before leaving the state) (citation omitted). From there the products were distributed to McArthur's customers based on standing orders and customers'

concluded that they may only conclude that a fixed and persisting intent is absent if all three of these factors are met. See, e.g., Baird v. Wagoner Transp. Co., 425 F.2d 407, 411 (6th Cir. 1970). We are, however, in accord with other circuits that have held that this "standard has been refined, if not phased out," in favor of the more general consideration that draws a fixed and persisting intent "from all of the facts and circumstances surrounding the transportation." International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Interstate Commerce Comm'n, 921 F.2d 904, 908 (9th Cir. 1990) (citations omitted); see also Roberts v. Levine, 921 F.2d 804, 812 (8th Cir. 1990); Central Freight Lines v. Interstate Commerce Comm'n, 899 F.2d 413, 421 (5th Cir. 1990). It is also noteworthy that this circuit did not discuss the above 3-factor test in its most recent motor carrier exemption case; instead, it merely emphasized that we are "guided by practical considerations" when determining whether an employee's activities are part of interstate commerce for the purposes of the FLSA. See Walters, 575 F.3d 1221.

8

projected needs, as calculated by customers' past purchases.[3] Under these circumstances, McArthur's warehouse was nothing more than a temporary storage hub used to facilitate the orderly distribution of products through interstate commerce. Additionally, some deliveries, such as those by Mena to Sky Chefs, a company that then sold those products to airlines for passenger consumption on domestic and international flights, were bound for destinations outside of Florida. Thus, Mena's transportation of these products was part of the "practical continuity of movement" across state lines. See Walters, 575 F.3d 1221 (holding that intrastate shuttle service for cruise passengers from an airport to a seaport was part of the practical continuity of movement of interstate travel).

Because McArthur established both elements of the motor carrier exemption, Mena cannot avail himself of the benefits of the overtime pay provision found in 29 U.S.C. § 207(a)(1). The district court did not err in granting summary judgment as to this claim.

C. Minimum Wage and Straight Time Pay Claims

---

[3] Mena argues that products were never destined for a particular customer. He contends that he would go to the warehouse, pick up a variety of dairy and refrigerated products, and "there was not a determination of what would be purchased by the customers until Appellant showed up with the mix . . . ." Such a claim is belied by the record. The record reflects that although there would be slight variations as to customers' actual needs, Mena did not merely stock his truck with a random variety of perishable refrigerated products and proceed from customer to customer, inquiring as to which items they wished to purchase. Specific products were earmarked for particular stores based on a formula that incorporated each customer's past usage and projected current needs.

Mena argues that even if he is exempted from the FLSA's overtime provision due to the motor carrier exemption, he is nonetheless entitled to straight time pay of twenty-two dollars per hour, or at least minimum wage for his hours worked in excess of forty hours per week. He argues that the district court misconstrued his minimum wage claim and erroneously failed to consider his straight time pay claim.

In its order, the district court noted that Mena's complaint (1) referred to "similarly situated security guards" even though Mena is a truck driver, (2) referenced "Defendants" even though there is but one defendant in the instant case, and (3) noted that the applicable minimum wage never exceeded $6.67 per hour and that Mena "was paid at $22.00/hr," but also alleged that McArthur violated minimum wage laws. The court reasoned that in light of these puzzling statements and the fact that Mena's counsel "uses the same general form complaint in each of the [FLSA] lawsuits his office brings," "the Court is satisfied that Plaintiff did not intend to allege minimum wage violations." Alternatively, the court held,

> were the Court to conclude that Plaintiff meant to bring a claim for
> minimum wage violations, Defendant would be entitled to judgment
> on the pleadings, considering Plaintiff's allegations that he worked an
> average of 72 hours per week for Defendant and was compensated at a
> rate of $22 per hour, far in excess of the minimum wage for the
> applicable time period.

10

Although we do not endorse the district court's conclusion that Mena recycled a complaint from another case and thereby accidentally included the minimum wage claim, nonetheless we conclude that summary judgment was appropriate because Mena failed to state a claim for straight time pay or minimum wage violations.[4] Mena's complaint and submissions to the district court never used the term "straight time" or articulated an argument that should have put McArthur on notice of this theory of liability. As to the minimum wage claim, Mena's complaint contained nothing more than a bare bones assertion that "he was not paid any amount of wages for hours worked in excess of forty hours weekly which would constitute a minimum wage violation." This nondescript statement was rendered further confusing by Mena's statement that the relevant minimum wage never exceeded $6.67 per hour, but that he received an hourly rate of $22.

Moreover, Mena had an opportunity to clarify his position on the minimum wage claim, but again declined to go into any substantive detail. In his response to McArthur's motion for summary judgment, Mena discussed the motor carrier exemption and then, without explanation, stated, "[e]ven if this Court was to disagree with Plaintiff's overtime arguments below and find that Defendants are entitled to the Motor Carrier Exemption regarding Plaintiff's overtime claim,

---

[4] See McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir. 1994) ("[W]e may affirm on any adequate ground, regardless of whether the district court relied on that ground.").

11

Plaintiff points to the Complaint filed in this action wherein Plaintiff also seeks unpaid minimum wages in addition to the overtime wages."

McArthur then filed a reply brief in which it stated that "McArthur believed Plaintiff had abandoned his minimum wage claim after it shared with Plaintiff and his counsel weeks before his deposition payroll records that established, contrary to his claim, that McArthur paid him at least minimum wage for the hours worked in his final week of employment." In its order, the district court addressed the minimum wage issue in light of the limited information presented to it and, after the court disposed of this issue, Mena did not file a motion to reconsider or provide other documentation to clarify his position. It is only on appeal that Mena explains his position and alleges that the straight time pay claim and minimum wage claim are alternative theories of liability that were only intended to apply in the event that the district court found that the motor carrier exemption prohibited Mena from collecting FLSA overtime pay for time accrued in excess of forty hours per week.

"[A] complaint need not provide detailed factual allegations . . . . Nonetheless, a complaint requires more than labels and conclusions . . . ." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 958 (11th Cir. 2009) (citations, quotations, and editing marks omitted). Because Mena was represented by counsel throughout the duration of this case, his pleadings and submissions are not entitled

12

to liberal construction. See GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) ("Courts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education."). We conclude that Mena failed to properly assert claims for straight time pay or minimum wages because his complaint never mentioned straight time pay and only contained a conclusory allegation as to the minimum wage violation. Even to the extent that Mena's complaint could be construed as asserting some theory of liability as to a minimum wage violation, we decline to address any such claim because the argument raised on appeal was not raised below and Mena has not presented any evidence to warrant circumventing our general rule prohibiting review of unpreserved arguments. See Denis v. Liberty Mut. Ins. Co., 791 F.2d 846, 848-49 (11th Cir. 1986) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal.").

### III. Conclusion

For the reasons set forth, we affirm the ruling of the district court.

**AFFIRMED.**