**Darrell BILLINGSLEA, on behalf of himself and all others similarly situated, Plaintiff**

**v.**

**SOUTHERN FREIGHT, INC., Defendant.**

**Civil Action No. 1:09–CV–1299–ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 2010.

Deirdre M. Stephens Johnson, Morgan & Morgan, P.A., Atlanta, GA, Jennifer M. Bermel, Morgan & Morgan, P.A., Memphis, TN, for Plaintiff.

Douglas Hanson Duerr, Jennifer Humphrey Keaton, Elarbee Thompson Sapp & Wilson, Atlanta, GA, for Defendant.

### ORDER

ORINDA D. EVANS, District Judge.

Plaintiff Darrell Billingslea ("Plaintiff"), on behalf of himself and all others similarly situated, seeks allegedly unpaid overtime compensation, liquidated damages, declaratory relief, and attorneys' fees and

costs under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–219 ("FLSA"), from his purported former employer, Southern Freight, Inc. ("Defendant").

The case comes before the Court on Defendant's motion for summary judgment [Doc. 22], to which Plaintiff has responded [Doc. 29] and in support of which Defendant has replied [Doc. 31]. For the following reasons, the motion for summary judgment is DENIED.

### I. *Background* [1]

Defendant is a Florida corporation operating in Georgia and registered with the United States Department of Transportation as an interstate motor carrier [Defendant's Statement of Undisputed Material Facts, Doc. 22–2, ¶ 3].[2] Defendant qualifies as a "motor private carrier" as defined by the Motor Carrier Act of 1935 ("MCA") [Doc. 22–2, ¶ 4]. *See generally* 49 U.S.C. § 13102(15).

Defendant provided third-party transportation services at a Nestle distribution facility located in Fairburn, Georgia [Doc. 22–2, ¶ 7]. Those services included receiving international and domestic shipments of Nestle products that originated outside

---

1. Except where otherwise noted, the following facts are undisputed between the parties.

2. SFI Logistics, Inc. ("SFI") is also a corporation operating in Georgia, registered with the Department of Transportation as an interstate motor carrier, that qualifies as a "motor private carrier" as defined by the Motor Carrier Act [Doc. 22–2, ¶¶ 1–2].

The parties dispute whether Defendant or SFI actually employed Plaintiff during the events that gave rise to this litigation. Defendant claims that it never employed Plaintiff and, as a result, that the Court should grant summary judgment in its favor on that ground alone [Defendant's Brief in Support of Motion for Summary Judgment, Doc. 22–3 at 4–5]. Plaintiff maintains that Defendant, not SFI, in fact employed him or at least held

itself out as his employer [Plaintiff's Brief in Opposition to Motion for Summary Judgment, Doc. 29 at 4–5]. In addition, Plaintiff claims that he "understood that he was employed by [Defendant] at all times material to this litigation" [Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Doc. 30, ¶ 6]. Finally, Plaintiff submitted correspondence in which Plaintiff's counsel suggested to Defendant's attorney that "[a]t the very least Defendant and SFI ... are joint employers" as defined by 29 C.F.R. § 791.2(b)(3) [Doc. 29–2 at 2].

The Court recognizes the disputed question of fact regarding Plaintiff's actual employer during the time pertinent to this litigation. However, for consistency's sake, the Court will refer to Defendant as the proper party-in-interest in this Order.

of the State of Georgia; Defendant was responsible for the freight in those shipments as a bailee [Doc. 22–2, ¶ 7]. The freight was intended for eventual retail sale elsewhere [Doc. 22–2, 18].

Defendant employed Plaintiff as a "yard hostler" at the Nestle distribution facility from August 2008 until November 2008, when he voluntarily resigned [Doc. 22–2, ¶ 20]. Prior to his employment, Defendant required Plaintiff to undergo a drug test and satisfy various physical requirements, consistent with standards set by the Department of Transportation [Doc. 22–2, ¶ 9]. Plaintiff satisfactorily completed the drug test and met the physical requirements [Doc. 22–2, ¶ 10]. Also, prior to his employment, Plaintiff was trained in relevant safety procedures and protocols for his position and acknowledged in writing that he received training on those procedures [Doc. 22–2, ¶ 11].

As a yard hostler at the Nestle distribution facility, Plaintiff drove a "hostler tractor," which he connected to freight trailers in order to transport the trailers from a staging area to loading docks at the facility [Doc. 22–2, ¶ 12].[3] Once Plaintiff moved a given trailer to the distribution facility loading dock, the freight in that trailer would be unloaded into the facility; afterwards, Plaintiff would use a hostler tractor to return emptied trailers to the staging area [Doc. 22–2, ¶ 13]. Nothing in the record indicates that Plaintiff ever drove a hostler tractor or any trucks on a public roadway or interstate highway, or that Defendant ever assigned Plaintiff the duty of driving any vehicles on a public roadway or interstate highway. Instead, the record indicates that Plaintiff performed all of his duties as a yard hostler on private property at the distribution facility.[4]

In addition to his core duties, Plaintiff performed various additional tasks designed to promote safety at the distribution facility. At the start of each of his shifts, Plaintiff inspected his assigned hostler tractor for any noticeable maintenance or damage issues [Doc. 22–2, ¶ 14]. If any such issues existed, he reported them to an on-site administrator and made a written report detailing the issues [Doc. 22–2, ¶ 14].

Plaintiff also inspected trucks, trailers, and freight that arrived at the distribution facility. When Plaintiff received refrigerated trucks that he was assigned to transfer, he ensured that the fuel and temperature levels of the truck remained satisfactory during the transfer [Doc. 22–2, ¶ 15]. When Plaintiff received a sealed freight trailer, he often used a bolt cutter to break the trailer's seal and opened one of the trailer's back doors before backing the trailer onto the loading dock [Doc. 22–2, ¶ 16]. After opening the back door of a given trailer, Plaintiff would assess whether the freight inside the trailer had shifted during transport or posed any danger to unloaders [Doc. 22–2, ¶ 16]. Plaintiff also inspected trailers that he transported for any noticeable damage, such as broken taillights or flat tires [Doc. 22–2, ¶ 19]. Plaintiff reported such damage to the administrative office and would then move the trailer to the maintenance area of the distribution facility yard [Doc. 22–2, ¶ 19].

When other yard hostlers backed trailers up to the distribution facility's loading

---

**3.** *See Wilson v. Notheis, Inc.,* No. 1:98–CV–2495–CAM, 1999 WL 1142531, at *1 (N.D.Ga. Nov. 16, 1999) (Moye, J.) ("Hostler-tractors are one-seat vehicles, travel at only ten to fifteen miles per hour, do not have speedometers, and are not licensed for use on public highways.").

**4.** *See Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 582 (C.D.Cal.2008) (describing similar employment duties and clarifying that "[h]ostlers do not go out on the road, but instead move trailers around at facilities").

dock, Plaintiff helped "spot" those trailers [Doc. 22–2, ¶ 17]. When Plaintiff backed trailers up to the loading dock, he often chocked the trailer tires to ensure that the trailer did not slide or roll unintentionally after being parked at the loading dock [Doc. 22–2, ¶ 18].

Defendant compensated Plaintiff on an hourly basis and internally classified him as exempt from the overtime compensation requirements of the FLSA, based on its interpretation of an exemption provision in the MCA [Doc. 22–2, ¶ 23]. Defendant always compensated Plaintiff at one-and-one-half times his hourly wage rate for all hours that he worked in excess of sixty hours during any single workweek [Doc. 22–2, ¶¶ 24–25]. Plaintiff recalled an instance in which his paycheck reflected fewer hours paid than he had in fact worked, but Defendant rectified that situation prior to Plaintiff's voluntary resignation [Doc. 22–2, ¶ 22].

On May 14, 2009, Plaintiff filed the instant civil action against Defendant, alleging that he and others similarly situated "routinely worked overtime hours but were not properly compensated for same" [Doc. 1, ¶ 13]. Plaintiff claims that he and others similarly situated were "entitled to receive proper payment of time and one-half their regular rate of pay for each hour worked in excess of forty (40) hours per week," and "[a]s a result of Defendant's intentional, willful and unlawful acts ... [he] has suffered damages [and] incurr[ed] reasonable attorneys' fees and costs" [Doc. 1, ¶¶ 13–14].

## II. *Summary Judgment Standard*

The Court will grant summary judgment only after determining that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is not "genuine" if it is unsupported by the evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, a fact is not "material" unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. 2505. "Factual disputes that are irrelevant or unnecessary will not be counted" in the summary judgment analysis. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When the non-moving party bears the burden of proof on the merits, the moving party's initial burden is to negate an essential element of the non-moving party's case or to show that there is no evidence to prove a fact necessary to the non-moving party's case. *See Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir.1995).

Only after the moving party meets its initial burden does any obligation on the part of the non-moving party arise. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). At that time, the non-moving party must present "significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc.*, 931 F.2d at 1477. If the non-moving party fails to do so, the moving party is entitled to summary judgment. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir.1991).

At the summary judgment stage, all evidence and justifiable factual inferences must be viewed in the light most favorable to the non-moving party. *Rollins v. Tech-South, Inc.,* 833 F.2d 1525, 1532 (11th Cir. 1987). " '[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Four Parcels of Real Prop.,* 941 F.2d at 1437 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The Court will consider Defendant's motion with this standard of review in mind.

III. *Discussion*

A. *The Motor Carrier Exemption to the FLSA*

The FLSA establishes that,

[e]xcept as otherwise provided in [29 U.S.C. § 207], no employer [may] employ any of his employees who in any workweek is engaged in commerce ... or is employed in an enterprise engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). However, this provision does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. § 31502]." 29 U.S.C. § 213(b)(1).

That section of the MCA authorizes the Secretary of Transportation to prescribe requirements for "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). As the Department of Labor has, by regulation, made clear:

The exemption of an employee from the hours provisions of the [FLSA] under [29 U.S.C. § 213(b)(1) ] depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under. the Motor Carrier Act ... and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a) (1971) (citations omitted).[5] *See also Spires v. Ben Hill County,* 980 F.2d 683, 686 (11th Cir.1993) ("The

---

5. The stated purpose of the regulations promulgated pursuant to the FLSA "is to make available in one place general interpretations of the Administrator [of the Wage and Hour Division of the Department of Labor] which will provide 'a practical guide to employers and employees as to how the office representing the public interest in [enforcing the law]

will seek to apply it.' " 29 C.F.R. § 782.0(a) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 138, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). "Regulations such as these, promulgated pursuant to an express delegation of legislative authority, are to be given controlling weight unless found to be arbitrary, capricious, or

Motor Carrier Act grants authority to the Secretary of Transportation to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.").[6]

As a general proposition, "[e]xemptions under the FLSA are to be construed narrowly against the employer who asserts them." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995) (citing *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1256 (6th Cir.1987)).[7] "The exemptions must be applied only to those 'plainly and unmistakably within [the] terms and spirit [of Section 213(b)(1) ].' " *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir.1973) (quoting *Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)).[8] "The burden is on the employer to establish entitlement to an exemption." *Mena v. McArthur Dairy, LLC*, 352 Fed.Appx. 303, 305 (11th Cir. 2009) (citing *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir.2008)). Generally, "[w]hether employees are exempt from the requirements of the Fair Labor Standards

Act involves a question of fact." *Hodgson*, 472 F.2d at 47 (citing *Walling v. Gen. Indus. Co.*, 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088 (1947)). But if underlying material facts are undisputed, "the ultimate decision whether an employee is exempt is a question of law." *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir.1992) (citation omitted).

### 1. The Class to Which Plaintiff's Employer Belonged

The first inquiry in determining whether Plaintiff was exempt from the overtime compensation provision of 29 U.S.C. § 207(a)(1) is whether Defendant or SFI belonged to that class of employers whose motor-vehicle transportation of passengers or property the Secretary of Transportation could regulate under the MCA. *See* 29 C.F.R. § 782.2(a). Plaintiff does not seriously contest the issue, and the Court concludes that both Defendant and SFI fell within that class of employers whose motor-vehicle transportation the Secretary of Transportation could, and did, regulate.

As stated above, the Secretary of Transportation has the authority to prescribe "qualifications and maximum hours of service of employees of, and standards of

---

contrary to the statute." *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

**6.** The regulations clarify that "the applicability of the exemption to an employee otherwise entitled to the benefits of the [FLSA] is determined exclusively by the existence of the power conferred under [49 U.S.C. § 31502] to establish qualifications and maximum hours of service with respect to him. It is not material whether such qualifications and maximum hours of service have actually been established by the Secretary of Transportation; the controlling consideration is whether the employee comes within his power to do so." 29 C.F.R. § 782.1(a).

**7.** *See also Fletcher v. Grinnell Bros.*, 150 F.2d 337, 340–41 (6th Cir.1945) ("The [Fair Labor Standards] Act must be liberally construed to include all employees not expressly excepted therefrom who reasonably may be deemed within its purview. It is to be construed strictly against those claiming exemption, for the provisions in question are remedial and persons claiming to be excepted therefrom must bring themselves within the letter and spirit of the exemptions which are subject to strict construction, particularly when the exemption claimed is for an employee engaged in interstate commerce.") (citations omitted).

**8.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See id.* at 1209.

equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). The MCA defines a "motor private carrier" as "a person, other than a motor carrier, transporting property by motor vehicle when ... the transportation is as provided in [49 U.S.C. § 13501]; ... the person is the owner, lessee, or bailee of the property being transported; and ... the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15).

Defendant and SFI transported property as provided in 49 U.S.C. § 13501. That section grants jurisdiction to the Secretary of Transportation and the Surface Transportation Board, in pertinent part, "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier ... between a place in ... a State and another place in the same State through another State." 49 U.S.C. § 13501(1)(B). Although Defendant and SFI did not transport Nestle's property across state lines,

they undisputedly transported such property within Georgia after that property had moved through the channels of interstate commerce and arrived in Georgia from outside the state. Such transportation of property qualifies under the definition in 49 U.S.C. § 13501.[9] Also, Plaintiff does not contest that Defendant and SFI acted as bailees of the transported property or that Defendant and SFI transported the property to further Nestle's commercial enterprise. The Court thus concludes that no genuine issue of material fact exists regarding the first prong of the exemption from the overtime compensation requirement of the FLSA.[10]

### 2. The Class of Work Involved in Plaintiff's Job

The crux of the parties' dispute concerns whether Plaintiff, while employed by Defendant, "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a).[11]

---

**9.** As the regulations make clear, "[h]ighway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under" the FLSA and the MCA. 29 C.F.R. § 782.7(b)(1). And "[t]he result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of" the FLSA and the MCA. *Id.* For purposes of the motor carrier exemption to the FLSA's overtime compensation requirement, "[t]ransportation within a single State is in interstate commerce within the meaning of the [FLSA] where it forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination." *Id.* (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568–69, 63 S.Ct. 332, 87 L.Ed. 460 (1943)).

**10.** Moreover, documents submitted by Defendant in support of the instant motion, and not controverted by Plaintiff, indicate that the pertinent federal authorities did, in fact, regulate Defendant's and SFI's operations. Defendant submitted one permit, issued by the Department of Transportation and dated May 20, 2002, denoting SFI as a "contract carrier of property" [Doc. 22–5 at 8] and another permit, issued by the Interstate Commerce Commission and dated November 19, 1987, denoting Defendant as a "contract carrier by motor vehicle" [Doc. 22–6 at 4–5]. These documents support the conclusion that federal authorities could regulate the general business activity of both Defendant and SFI, regardless of which of those entities actually employed Plaintiff.

**11.** *See also West v. Smoky Mountains Stages, Inc.,* 40 F.Supp. 296, 298 (N.D.Ga.1941) (Underwood, J.) ("The question resolves itself ... into an inquiry as to whether or not plaintiff

The motor carrier exemption from the overtime compensation requirement of the FLSA applies

to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined (i) as that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* § 782.2(b)(2).[12] But "[i]n determining whether an employee falls within such an exempt category, neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of his job." *Id.* (citations omitted).[13]

 Defendant has not clearly analogized the work that Plaintiff performed in his position as a yard hostler to any of the four categories of employees whose maximum hours of service the Secretary of Transportation may, as a general matter, regulate: drivers, drivers' helpers, loaders, and mechanics. The Court first concludes that the work that Plaintiff performed was

not analogous to the work performed by employees in any of those jobs. And, to the extent that Plaintiff arguably performed analogous work as a yard hostler, such work did not directly affect the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA. As a result, Defendant has not borne its burden of establishing that Plaintiff fell within the motor carrier exemption to the overtime compensation requirement, and summary judgment on that ground in Defendant's favor is denied.

### a. "Drivers"

The FLSA regulations define a "driver," for purposes of the authority of the Secretary of Transportation to regulate such employees pursuant to the MCA, as "an individual who drives a motor vehicle in transportation which is, within the meaning of the [MCA], in interstate or foreign commerce." 29 C.F.R. § 782.3(a). The regulations give numerous examples of what specific individuals this definition encompasses, including "[i]ndividuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in inter-

---

was an employee whose activities affected the safety of operation of motor vehicles used in interstate commerce....").

Throughout this discussion, the Court assumes, for argument's sake, that Defendant transported property in interstate commerce. *See Mena,* 352 Fed.Appx. at 307 (where plaintiff, a "swing driver," transported property that "previously had been manufactured in other states by [defendant's] parent company and delivered to [defendant's] Miami warehouse," and where that "warehouse was nothing more than a temporary storage hub used to facilitate the orderly distribution of products through interstate commerce," the transportation of such property occurred in interstate commerce as defined by the MCA).

12. *See also id.* § 782.2(d) ("[T]he exemption does not apply to an employee whose job does

not involve engagement in any activities which have been defined as those of drivers, drivers' helpers, loaders, or mechanics, and as directly affecting the safety of operation of motor vehicles.") (quotation omitted); *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181–82 (11th Cir.1991) (adopting and applying this two-part test).

13. *See also Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 707, 67 S.Ct. 954, 91 L.Ed. 1184 (1947) ("[T]he District Court shall not be concluded by the name which may have been given to [the employee's] position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in [exemption-qualifying] activities.").

state or foreign commerce" and "individuals who ride on motor vehicles engaged in transportation in interstate or foreign commerce and act as assistant or relief drivers of the vehicles." *Id.* Notably, the regulations recognize that "[i]t has been held that so-called 'hostlers' who 'spot' trucks and trailers at a terminal dock for loading and unloading are not exempt as drivers merely because as an incident of such duties they drive the trucks and tractors in and around the premises of the trucking terminal." *Id.* § 782.3(b) (citing *Keegan v. Ruppert,* 2 F.R.D. 8 (S.D.N.Y.1941)).[14]

Plaintiff did not actually perform the work of a "driver," as defined by the FLSA regulations, while employed as a yard hostler by Defendant. Based on the record, the only vehicle that Plaintiff drove or was authorized to drive as part of his employment with Defendant was a hostler tractor that he could not, and did not, take on to any public roads or interstate highways. Plaintiff did not drive the trucks that he moved with the hostler tractor around the distribution facility yard as an incident of his employment. As a result, the regulations' discussion of "hostlers" and their non-exempt status from the overtime compensation requirement of the FLSA applies with even greater force to the work actually performed by Plaintiff during his tenure with Defendant—work that did not even incidentally involve driving anything but a hostler tractor in the distribution facility yard. Given the regulations' unambiguous language, the Court concludes that Plaintiff did not work as an FLSA-exempt "driver" while employed by Defendant.

### b. *"Drivers' 'Helpers'"*

The FLSA regulations define a "driver's 'helper'" as an individual "who is required to ride on a motor vehicle when it is being operated in interstate or foreign within the meaning of" the MCA, including, among others, "armed guards on armored trucks and conductorettes on buses." 29 C.F.R. § 782.4(a).

Nothing in the record indicates that, while employed as a yard hostler, Defendant required Plaintiff to ride on any vehicles that were operated in interstate or foreign commerce as defined by the MCA. Given the absence of such evidence, the Court cannot conclude that Plaintiff acted as a "driver's 'helper,'" as defined by the FLSA regulations, even if Plaintiff undisputedly assisted some long-distance truck drivers by checking their trucks and trailers for maintenance problems and reporting any such problems to maintenance officials at the distribution facility.

### c. *"Loaders"*

The FLSA regulations define a "loader" as "an employee of a carrier subject to section 204" of the MCA who is not a driver or a driver's helper and "whose

**14.** The Department of Labor's Field Operations Handbook directly addresses the importance of operating a vehicle on public roads for an employee to qualify as a "driver": "The movement of trucks, tractors, or trailers (either empty or loaded) *over the public highways* between loading platforms, the garage, storage facilities or terminals, where such movement is either the beginning or continuation of an interstate or foreign journey, is itself transportation in interstate or foreign commerce subject to the jurisdiction of the DOT. *If such 'spotting' of equipment takes place entirely on the premises of a terminal or* other private property, however, DOT would have no jurisdiction since it would not be transportation over the public highways." Dep't of Labor Field Operations Handbook § 24b00 (1982) (emphases added). And though "an agency's internal directives to its employees," such as the Field Operations Handbook, "are without the force of law," the Court of Appeals has found the Field Operations Handbook persuasive in prior cases, and the Court finds the Department of Labor's interpretation similarly persuasive here. *See Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1255 (11th Cir.2001).

duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." · 29 C.F.R. § 782.5(a). The regulations note that such "loaders" are usually responsible "for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." *Id.* (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). The regulations' definition of a "loader" also includes a *de minimis* exception to the rule:

> The mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual, or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of "loading" which directly affects "safety of operation."

*Id.* § 782.5(c).[15]

Nothing in the record indicates that the work actually performed by Plaintiff while employed as a yard hostler coincided with the work of a "loader" as defined by the FLSA regulations. Plaintiff moved over short distances, rather than loaded, trailers containing already-loaded freight and emptied trailers. The record does not indicate that Plaintiff exercised, or had the authority to exercise, any discretion or judgment regarding the placement, layout, or distribution of the freight loads in the

trailers that arrived at or left from the distribution facility. Defendant has emphasized Plaintiff's role in opening trailers that he moved around the distribution facility yard and checking the freight in those trailers to ensure the safety of eventual freight unloaders. But the Court concludes that such activities formed so trivial and insignificant a part of Plaintiff's activities as to not directly affect the safety of the operation of the trailers, and the trucks that transported them, in interstate or foreign commerce. For these reasons, Plaintiff did not perform job duties, as a yard hostler for Defendant, consistent with the definition of a "loader" given by the FLSA regulations.

#### d. *"Mechanics"*

Finally, the FLSA regulations define a "mechanic" as an employee "whose duty it is to keep motor vehicles operated in interstate or foreign commerce by his employer in a good and safe working condition." 29 C.F.R. § 782.6(a). The regulations note:

> [M]echanics perform work of this character where they actually do inspection, adjustment, repair, or maintenance work on the motor vehicles themselves (including trucks, tractors and trailers, and buses) and are, when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways through the correction or prevention of defects which have a direct causal connection with the safe operation of the unit as a whole.

*Id.* (citations omitted). And the regulations also clarify:

---

15. This exception is redundant, as the regulations also more generally state that "where the continuing duties of the employee's job have no substantial direct effect on ... safety of operation or where such safety-affecting activities are so trivial, casual, and insignifi-

cant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties." 29 C.F.R. § 782.2(b)(3) (citing *Pyramid Motor Freight Corp.*, 330 U.S. at 708, 67 S.Ct. 954).

Activities which do not directly affect ... safety of operation include those performed by employees whose jobs are confined to such work as. filling radiators, checking batteries, and the usual work of such employees as stockroom personnel, watchmen, porters, and garage employees performing menial nondiscretionary tasks or disassembling work. Employees whose work is confined to such "nonsafety" activities are not within the exemption, even though the proper performance of their work may have an indirect effect on the safety of operation of the motor vehicles on the highways.

*Id.* § 782.6(c)(1) (citations omitted).[16]

The Court concludes that any work directed at inspecting the trucks and trailers that Plaintiff moved at the distribution facility did not qualify as the work of a "mechanic" as defined by the FLSA regulations, and that in any event such work only indirectly affected the safety of those trucks' and trailers' operation on the interstate highways. The record indicates that Plaintiff had no discretion and was not in fact required or permitted by Defendant to install, adjust, repair, or maintain any parts on the trucks and trailers that he moved around the distribution facility

yard. Instead, the extent of Plaintiff's duty involved briefly inspecting trucks and trailers that he moved for potential safety hazards or maintenance issues and, if he found any, reporting the issues to administrative and maintenance staff who in fact had the authority to repair all mechanical problems. Plaintiff performed no hands-on mechanical labor of his own. The fact that Plaintiff had the duty to inspect trucks and trailers for maintenance issues like flat tires or broken taillights and to report such problems to the employees actually tasked with fixing them does not mean that Plaintiff qualified as a "mechanic" as defined by the regulations. As a result, Defendant has not shown that Plaintiff clearly falls under any of the four employee categories listed in the FLSA regulations.

### 3. *Summary*

Defendant and SFI clearly fall into the class of employers whose motor-vehicle transportation the Secretary of Transportation could, and did, regulate. In viewing the evidence in the light most favorable to Plaintiff, however, the Court concludes that Defendant has not borne its burden of showing that Plaintiff, through the actual work that he performed as a yard hostler, "plainly and unmistakably" fell within the

---

**16.** The Department of Labor's Field Operations Handbook states that "the installation, inspection, repair, and maintenance of refrigeration equipment on motor vehicles operated in interstate commerce are safety-affecting activities subject to [Department of Transportation] jurisdiction under [Section] 204 of the Motor Carrier Act." Dep't of Labor Field Operations Handbook § 24b02. Defendant quotes this statement in arguing that Plaintiff, who ensured that refrigerated trailers that he moved around the distribution facility yard maintained their proper temperatures, qualified as a "mechanic" as defined by the FLSA regulations [Defendant's Reply to Summary Judgment Motion, Doc. 31 at 4–5].

This argument, like the others put forward by Defendant on this issue, is unavailing.

Nothing in the record indicates that Plaintiff performed a mechanic's work on the refrigerated trailers that he moved around the distribution facility yard. Plaintiff did not have the duty or discretion, and was not in fact required by Defendant, to install, repair, or otherwise maintain any equipment on the refrigerated trailers that he moved with his hostler tractor. Rather, the record before the Court shows that the extent of Plaintiff's involvement with those trailers involved a cursory inspection of their temperature readouts to ensure that the temperatures inside the trailers did not materially change, potentially harming the freight inside. In determining the applicability of the motor carrier exemption, the act of checking a gauge materially differs from that of turning a screw.

terms of the motor carrier exemption to the overtime compensation requirement found in the FLSA. *Hodgson,* 472 F.2d at 47.

Defendant emphasizes the numerous safety-related activities that Plaintiff undisputedly undertook as a yard hostler and stresses the effect that those activities arguably had on the safe operation of trucks and trailers used to transport property through interstate commerce. But the second prong of the motor carrier exemption test contains two wholly independent parts. To bear its burden of showing that Plaintiff fell within the motor carrier exemption, Defendant was required to show that Plaintiff performed the work of either a driver, driver's helper, loader, or mechanic, *and* that such work directly affected the safety of operation of motor vehicles in transporting property in interstate or foreign commerce on the public highways. Though the record reflects that some of Plaintiff's activities as a yard hostler promoted the safe operation of trucks and trailers transporting property through interstate commerce, nothing in the record indicates that those activities were those of a driver, driver's helper, loader, or mechanic as defined by the FLSA regulations. Without more, the Court finds summary judgment in Defendant's favor on the basis of the motor carrier exemption inappropriate.

### B. *Identity of Plaintiff's Actual Employer*

As stated in Footnote Two above, the parties continue to dispute who actually employed Plaintiff during the time pertinent to this litigation: Defendant or SFI. To his response to the instant summary judgment motion, Plaintiff attached photocopies of three paychecks issued to him in 2008 by SFI through an account at Eastside Commercial Bank in Duluth, Georgia [Doc. 29–2 at 4–6]. Plaintiff also attached two separate printouts of "Business Entity" information, as reported by the Georgia Secretary of State, for Defendant and SFI [Doc. 29–2 at 11–14].

These attachments, along with the arguments made by Plaintiff regarding who he perceived to be his actual employer and which entity held itself out as his actual employer, as well as the documents attached by Defendant to its motion, raise a genuine issue of material fact regarding Plaintiff's actual employer during the time pertinent to this litigation. Plaintiff has also asserted that Defendant and SFI may have jointly employed him during that relevant time, which if proven would render Defendant and SFI "responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek[s]." 29 C.F.R. § 791.2(a).[17] Faced with this genuine is-

---

**17.** Defendant noted the Court of Appeals' adoption of an eight-factor test to apply in determining whether a joint employment relationship existed between two purported employers, which takes into consideration: "(1) the nature and degree of the [purported employer's] control of the [employees]; (2) the degree of the [purported employer's] supervision, direct or indirect, of the [employees'] work; (3) the [purported employer's] right, directly or indirectly, to hire, fire, or modify the [employees'] employment conditions; (4) the [purported employer's] power to determine the [employees'] pay rates or methods of payment; (5) the [purported employer's]

preparation of payroll and payment of the [employees'] wages; (6) the [purported employer's] ownership of the facilities where the work occurred; (7) the [employees'] performance of a line-job ...; and (8) the [purported employer's] and [second purported employer's] relative investment in equipment and facilities." *Antenor v. D & S Farms,* 88 F.3d 925, 932 (11th Cir.1996) (citing *Aimable v. Long & Scott Farms, Inc.,* 20 F.3d 434, 440–45 (11th Cir.1994), *cert. denied,* 513 U.S. 943, 115 S.Ct. 351, 130 L.Ed.2d 306 (1994)). But considering the numerous disputes of material fact that clearly exist between the parties

sue of material fact, and considering that Defendant may move for a directed verdict in its favor if, at trial, Plaintiff does not bear his burden of establishing that Defendant was in fact his employer or joint employer during the time relevant to this litigation, the Court finds summary judgment on this ground in Defendant's favor inappropriate.

## IV. *Conclusion*

The Court has carefully considered the parties' submissions. The Court concludes (1) that the motor carrier exemption to the

FLSA's overtime compensation requirement does not apply under the factual circumstances of this case, and (2) that a genuine issue of material fact remains regarding Plaintiff's actual employer at the time pertinent to this litigation. Therefore, Defendant's motion for summary judgment [Doc. 22] is DENIED, and the parties are DIRECTED to submit a consolidated proposed pretrial order within thirty days of the entry of this Order.

---

regarding this test's application here, the Court concludes that resolving these factors is

not a proper matter for summary adjudication.